IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Orrie D. Burdine,<br><br>               Plaintiff,<br><br>vs.<br><br>Greenville Technical College;<br>Lydia Dunnaway; Steve Valand; and<br>Edward Holman,<br><br>               Defendants. | Civil Action No. 6:08-3764-HFF-BHH<br><br>**REPORT AND RECOMMENDATION<br>OF MAGISTRATE JUDGE** |

This matter is before the Court on the defendants' motion for summary judgment [Doc. 31], pursuant to Federal Rule of Civil Procedure 56, and the defendants' motion *in limine* [Doc. 39]. The plaintiff has pled claims pursuant to 42 U.S.C. §§ 1981 & 1983 and the South Carolina Whistleblower's Act, S.C. Code § 8-27-10 *et seq*. The plaintiff contends that her employment was terminated on account of her race.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

**FACTUAL BACKGROUND**

The plaintiff began her employment with the defendant Greenville Technical College in March of 1991. (Burdine Dep. at 29.) She was hired as a full-time instructor and her duties included lecturing, teaching and some advising of students. *Id*. at 30. The plaintiff became the Department Head of the Surgical Technology Program between 2002 and 2003. *Id*. at 73. As a Department Head, the plaintiff was responsible for the overall operation of the Department, for the implementation of policies and procedures, maintaining student records, syllabi, curriculum, faculty, teaching, advising, developing the budget,

maintaining accreditation records, working with affiliated agencies, and community coordinating. *Id*. at 74.

It appears that the incidents relevant to the plaintiff's claims began, on or about October 6 or October 9, 2006, when concerns regarding the falsification of student records arose. *Id*. at 36. During this time, Lydia Dunaway, the plaintiff's immediate supervisor, received three student behavior characteristic evaluations completed by the plaintiff, which contained hand written observations relative to these students' performance in the Surgical Technology Program. (Def. Ex. B.) However, the students evaluated, were never actually enrolled in the Program, insofar as two had never attended and one had dropped the class. (Dunaway Dep. at 50.) While the plaintiff admitted that she completed the evaluations of students not in the Program she maintained that she had not done so with intent or malice. (Burdine Dep. at 39.)

Thereafter, in November of 2007, a majority of students enrolled in the Program submitted a petition expressing serious concern regarding the plaintiff's ability to lead as the Department Head and concern over her competency as an instructor in the Program. (Def. Ex. C.)

The defendants represent that, during this same time, students enrolled in the Program were required to pass a certification examination in January 2008. The plaintiff was the instructor for these students. (Dunaway Dep. at 80.) Apparently, only a few passed the examination. *Id.*

Additionally, in November of 2007, the faculty members unanimously gave the plaintiff a vote of no confidence. (Dunaway Dep. at 88.)

It is undisputed that, on December 13, 2007, Dunaway and the Interim Director of Human Resources, met with the plaintiff and presented a sixty (60) day Corrective Action Plan. (Def. Exs. D, E.) The Corrective Action Plan requested that plaintiff review and update the Departments strategic plan, work on academic preparedness, and work on

2

communications with Department faculty, staff, students, and agencies. *See id.* However, at the end of that period, the defendants believed that the plaintiff had not shown improvement in the areas outlined. *Id.*

In response to the plaintiff's alleged failure to show improvement, the defendants issued the plaintiff a written Warning Notice of Substandard Performance, on March 13, 2008. (Def. Ex. D.) The Warning Notice of Substandard Performance required that the plaintiff evidence improvement in the following areas: (1) curriculum/course development; (2) teaching performance/instructor job duties; (3) supervision of faculty; (4) student advisement; and (5) professional development. *Id.*

It is undisputed that, on April 11, 2008, the plaintiff filed a complaint of discrimination. The College reviewed the plaintiff's complaint and determined that as she had not alleged an adverse employment action, the complaint was not grievable in accordance with the Colleges grievance policy and procedure.

Thereafter, on June 16, 2008, the plaintiff was notified that as a result of not meeting the objectives outlined in either the Corrective Action Plan or the Warning Notice of Substandard Performance, her Department Head duties would be removed.

On June 25, 2008, the plaintiff initiated a grievance as to the following: (1) demotion from the Department Head position; (2) continuous harassment by Dunaway from the time the plaintiff attempted to file a grievance against her, on November 28, 2007; and (3) Dunaways intentional infliction of emotional distress.

In the interim, and prior to receiving a final decision as to her grievance, the plaintiff submitted her resignation to Dunaway on July 30, 2008. (Def. Ex. H.) The plaintiff's resignation stated that she was resigning due to her demotion without cause and alleged that Dunaway appeared to be motivated by racial prejudice. *Id.*

**APPLICABLE LAW**

Federal Rule of Civil Procedure 56© states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252.

4

Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Furthermore, Rule 56(e) provides in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e). Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must produce existence of every element essential to his action that he bears the burden of adducing at a trial on the merits.

## **DISCUSSION**

The parties spend significant energy arguing whether or not the plaintiff can establish a "constructive discharge claim." (See Def. Mem. Supp. Summ. J. at 10.) But, the plaintiff has not pled any such cause of action. (See generally Compl.) She has pled claims pursuant to 42 U.S.C. §§ 1981, 1983 and the South Carolina Whistleblower Act, S.C. Code § 8-27-10 *et seq*. *See id.* Moreover, it is the undersigned's view and experience that the constructive discharge concept is the legal fiction by which wrongful termination claims are salvaged where no actual termination or other adverse employment action has, in fact, occurred. In other words, constructive discharge is an element of a structurally larger claim, to wit, Title VII, Section 1983, the South Carolina Whistleblower Act, as opposed to some legal end unto itself. By way of example, an at-will employee can be constructively discharged through the device of personal cruelty without any real recourse in law, where

some sort of actionable discriminatory animus is absent. So, to argue a claim for constructive discharge apart from the framework of the statutes which are intentionally animated by the specific protection afforded certain and limited classes of people, seems misplaced. Case law, including that cited by the parties, would seem to bear this out. *See, e.g., Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 186 (4th Cir. 2004) (discussing constructive discharge in the context of wrongful termination, Title VII, and Section 1981 claims); *Goldsmith v. Mayor & City Council of Baltimore*, 987 F.2d 1064, 1072 (4th Cir. 1993) (discussing constructive discharge in the context of a state law claim for intentional interference with contract and prospective advantage).

Accordingly, the Court will consider whether the actions of the defendants amounted to a constructive discharge but only insofar as such a discussion is relevant to establish an element of any of the plaintiff's claims. It does not seem, as either a matter of the plaintiff's own pleadings or of law, that it can be considered somehow independently. The district judge, of course, might disagree.

**I.      Race Discrimination (42 U.S.C. §§ 1981, 1983)**

As stated, the plaintiff contends that she was terminated on account of her race in violation of Sections 1981 and 1983 of Title 42 of the United States Code. For purposes of considering allegations of discriminatory treatment or termination, a Section 1981 or 1983 claim is analyzed consistent with those principles which govern consideration of Title VII claims. *See Lightner v. City of Wilmington, N.C.*, 545 F.3d 260, 263 n.\* (4th Cir. 2008); *Love-Lane v. Martin*, 355 F.3d 766, 786 (4th Cir. 2004).

As the Fourth Circuit has explained in the wake of *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003), a Title VII plaintiff may "avert summary judgment . . . through two avenues of proof." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005) (quoting *Hill v. Lockheed Martin Logistics Management, Inc.*, 354 F.3d 277, 284 (4th Cir. 2004) (emphasis added). A plaintiff can survive a motion for summary judgment by

presenting direct or circumstantial evidence that raises a genuine issue of material fact as to whether an impermissible factor such as race motivated the employer's adverse employment decision. *Diamond*, 416 F.3d at 318. Pursuant to the 1991 Act, the impermissible factor need not have been the sole factor. As long as it motivated the adverse action, the plaintiff can establish an unlawful employment practice. *See* 42 U.S.C.A. § 2000e-2(m); *see also King v. Hardesty*, 517 F.3d 1049, 1057 (8th Cir. 2008) (permitting use of *Price Waterhouse v. Hopkins*, 490 U.S. 228, 258 (1989) mixed-motive standard in a Section 1981, 1983 case). Alternatively, a plaintiff may "proceed under [the McDonnell Douglas ] 'pretext' framework, under which the employee, after establishing a prima facie case of discrimination, demonstrates that the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination." *Hill*, 354 F.3d at 285. As stated, *McDonnell Douglas* is likewise available to establish Section 1981 and 1983 claims, as well. *See Love-Lane*, 355 F.3d at 786.

*McDonnell Douglas* requires that an employee first prove a *prima facie* case of discrimination by a preponderance of the evidence. If she succeeds, the employer has an opportunity to present a legitimate, nondiscriminatory reason for its employment action. If the employer does so, the presumption of unlawful discrimination created by the *prima facie* case drops out of the picture, and the burden shifts back to the employee to show that the given reason was just a pretext for discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973).

In *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), the Supreme Court reiterated that evidence of pretext, combined with the plaintiff's *prima facie* case, does not compel judgment for the plaintiff, because " [i]t is not enough . . . to disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination." *Id.* at 147 (citation omitted). However, the Court also stated that, under the appropriate circumstances, "a plaintiff's prima facie case,

combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Id.* It is the plaintiff's burden to create an inference that the defendant's proffered reason is a pretext for intentional discrimination. *See id.* at 147-48. Pretext analysis does not convert Title VII into a vehicle for challenging unfair--but nondiscriminatory--employment decisions. *Holder v. City of Raleigh*, 867 F.2d 823, 828 (4th Cir.1989). Conclusory allegations, without more, are insufficient to preclude the granting of the defendant's summary judgment motion. *See Ross* v. *Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985) *abrogated on other grounds by Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989).

The parties have recognized these two avenues of proof, although, as discussed, their attention has principally been directed to the issue of whether the plaintiff was constructively discharged. Moreover, even to the extent they have employed *McDonnell Douglas* in their competing arguments, it seems that the parties have stopped somewhat short of following the analysis fully through.

The plaintiff contends that she survives summary judgment under the *McDonnell Douglas* burden-shifting proof scheme. The defendants reject that she can establish any *prima facie* case.

### A. *Prima Facie* Case

To establish a *prima facie* case of discriminatory discharge, the plaintiff must show: (1) that she is a member of a protected class; (2) that she suffered from an adverse employment action; (3) that at the time the employer took the adverse employment action she was performing at a level that met her employer's legitimate expectations; and (4) other employees who are not members of the protected class were retained under apparently similar circumstances or otherwise treated favorably. *See Bryant v. Bell Atlantic Maryland, Inc.*, 288 F.3d 124, 133 (4th Cir. 2002). As stated, the parties have drawn battle lines over the second element, along which the defendants contend that the plaintiff has not suffered

any constructive discharge. The undersigned believes that the issue of constructive discharged need not be reached, however.

Even if plaintiff had suffered an adverse employment action,[1] she cannot establish the fourth element of her *prima facie* case because she has not identified an individual outside of the protected class who was similarly situated and yet treated more favorably. She conceded as much in her deposition. (Burdine Dep. at 106.) In a brief paragraph included in her factual recitation, however, the plaintiff now summarily argues that the defendant's treatment of her can be readily compared to their treatment of a Joyce Moyer. (Pl. Resp. at 3.) The plaintiff has put forward evidence that Moyer improperly included the designation "CST" (Certified Surgical Technologist) with her signature on documents during times when her certification had actually lapsed. (Moyer Dep. at 42-45.) The plaintiff provides no additional treatment of this point in her actual legal analysis. (See Pl. Resp. at 10-11.)

To be similarly situated, however, a "plaintiff must establish that 'other employees' were similarly situated in all relevant respects; that they 'dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *See Ward v. City of North Myrtle Beach*, 457 F. Supp. 2d 625, 643 (D.S.C. 2006); *see also Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir.1992). First, the plaintiff was a department head and Moyer reported to her, by plaintiff's own admission.

---

[1] "An adverse employment action is a discriminatory act which adversely affects the terms, conditions, or benefits of the plaintiff's employment." *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375-76 (4th Cir.2004); *Cornelius v. City of Columbia*, 663 F. Supp. 2d 471, 476 (D.S.C. 2009). "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998). The United States Supreme Court's consideration of adverse employment actions in *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006), was expressly limited to the retaliation provision of Title VII. *Id*. at 66.

(Pl. Resp. at 1, 4.) Supervisors and non-supervisors are not similarly situated. *See Vasquez v. County of Los Angeles*, 349 F.3d 634, 641 (9th Cir.2003); *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir.1994).

Moreover, the plaintiff has not really produced evidence that the relative conduct of her and Moyer were of the same kind. First, as far as the Court can tell, the actions taken against the plaintiff, including the Corrective Action Plan (Def. Ex. D), written Warning Notice, *id.*, and demotion as Department Head, were only based, in part, if at all, on problems with evaluations of students who had not completed her course. Other reasons included the fact that students under her instruction had performed poorly on a certification exam (Dunaway Dep. at 80-87) and that the entire faculty had given her a vote of no confidence as Department Head, *id.* at 88, prior to any of the above actions. So, it cannot be said that the plaintiff was demoted or constructively discharged simply because she submitted evaluations for students who did not complete her course. Accordingly, any attempt to compare the isolated act of Moyer in the use of the CST designation, to the series of events which led to actions taken against the plaintiff, seems inconsistent with what it means to review the discipline imposed upon individuals similarly situated.

Finally, even were it reasonable to circumscribe the plaintiff's acts simply to the evaluation issue, the Court finds Moyer's act distinct and incomparable. Moyer was not found to have completed student evaluations for students who did not actually complete her class. It is undisputed that the plaintiff did, whether intentionally or not. The plaintiff has not explained how the two incidents can rightly be characterized as the same conduct. The Court would be disinclined to lump the two incidents under some generalized umbrella of scrivener's errors. The implications of the two incidents are simply too disparate. The plaintiff's actions would have taken greater time than the signature designation by Moyer and involved actual students under her supervision. The Court could imagine a view that treats the plaintiff's inadvertence more serious than Moyer's, insofar as completing the

evaluation necessarily took more prolonged intentionality or indifference and, therefore, a greater degree of negligence or malfeasance, arguably. The Court would not decide it, other than to say that the conduct of Moyer and the plaintiff does not seem obviously or legally comparable.

As stated, the plaintiff has made no real effort to argue to the contrary. The Court cannot recommend that the plaintiff has put forward evidence from which a reasonable jury could conclude that the fourth element of her *prima facie* case has been satisfied. The Court would note that the fourth element of a *prima facie* case is not inflexible. "The precise requirements of a prima facie case can vary depending on the context and were never intended to be rigid, mechanized, or ritualistic." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (U.S. 2002) (quotations omitted). The Court, therefore, has remained broadly open to evidence that similarly situated employees outside the protected class received more favorable treatment. *See White v. BFI Waste Servs.*, LLC, 375 F.3d 288, 295 (4th Cir. 2004). The plaintiff has simply not shown it.

But, even were the district court to disagree, and conclude that a *prima facie* case could be made, the undersigned would still recommend dismissal on account of the plaintiff's failure to demonstrate that the defendant's legitimate, non-discriminatory basis for her demotion was pretextual.

### B. Legitimate, Non-discriminatory Reason

The defendant has advanced the following non-discriminatory reasons for demoting the plaintiff:

• In October of 2007, the plaintiff submitted student evaluations for individuals who had not actually completed her class (Dunaway Dep. at 50; Def. Ex. B);

• Thereafter, students submitted a petition indicating their concern over the plaintiff's competency as an instructor (Def. Ex. C);

11

- In November 2007, the faculty members gave the plaintiff a vote of no confidence in her performance as Department Head (Dunaway Dep. at 88);

- In December 2007, Students under the plaintiff's instruction failed to perform satisfactorily on a certification exam (Dunaway Dep. at 80-87);

- As a result of these incidents, the plaintiff was placed on a sixty day Corrective Action Plan, in December 2007 (Def. Ex. D);

- At the end of that period, the plaintiff had not shown necessary improvement, id.;

- Accordingly, she was given a written Warning Notice of Substandard Performance, in March 13, 2008;

- In June 16, 2008, she was removed as Department Head for her failure to meet the objectives of the Corrective Action plan.

Unsatisfactory job performance constitutes legitimate and non-discriminatory reasons for demotion or other employee discipline. *Karpel v. Inova Health System Services*, 134 F.3d 1222, 1229 (4th Cir. 1998) ("Inova's termination of Karpel was based on her unsatisfactory job performance, including, her tardiness and failure to complete her monthly summaries.") .

### C. Pretext

Because the defendants have proffered legitimate, non-discriminatory reasons for their actions, the plaintiff bears the burden of demonstrating that the real reason for the termination was, in fact, an unlawful one. *See Reeves*, 530 U.S. at 142-43. Most commonly plaintiffs attempt to satisfy this burden by suggesting that a defendant's proffered reasons are pretextual or false. *See id.* at 144. The plaintiff, however, has neither recognized her burden nor made any attempt to satisfy it. Her analysis simply terminates after a discussion of the *prima facie* case. Of course, it is clear from her factual recitation that the plaintiff certainly disagrees with the basis for her demotion. Whether such discussion amounts to proof of falsity, of the same, seems less clear. The Court will

12

consider that disagreement as far as it takes the plaintiff's claims, in lieu of some specific argument by the plaintiff that the reasons for demotion/discharge were in fact pretextual.

None of the plaintiff's complaints relate to the actual falsity of the defendants' reasons, however. She contends that Dunaway would not allow her to properly manage Moyer (Pl. Brief at 4); that Dunaway would not approve a trip the plaintiff proposed relating to a new program but then reprimanded her for not taking Moyer (Pl. Ex. 8); that after Moyer had left Greenville Tech for another job, she indicated that she would not return to Greenville Tech until the plaintiff was gone (Biggs Aff.; Bolt Aff.).[2]

Even if the Court conceded all of it, the evidence does not refute the truthfulness of the alleged facts: that the plaintiff submitted evaluations for students not in her class or that students in her class failed to perform well on an important certification exam. As to the latter, the plaintiff has made no rejoinder. As to the former, the plaintiff of course contends that it was inadvertent. The defendants, however, have never stridently argued that the evaluations were intentionally falsified. That seems besides the point. The concern, of course, would be that the evaluator, whether incidentally or not, would have not realized the mistake. The oversight, in other words, need not have been malicious to say something about competency and be, therefore, a basis for corrective action. Regardless, the plaintiff has not produced evidence that any of the events were incredible. She has not denied that the faculty gave her a vote of no confidence nor has she attempted to explain how she met the objectives of the Corrective Action Plan, when the defendants said she did not.

The plaintiff has simply not carried her burden to show pretext. It seems clear from the facts that there was some substantial personal tension among the faculty and students concerning the plaintiff. The plaintiff, however, is not entitled to an even, fair, or just work place. Unfortunately, pretext analysis does not convert Title VII or Sections 1981 and 1983 into vehicles for challenging unfair--but nondiscriminatory--employment decisions. *Holder*

---

[2] The Court will discuss the admissibility of these affidavits in more detail below.

*v. City of Raleigh*, 867 F.2d 823, 828 (4th Cir.1989). The inquiry under Title VII and Sections 1981 and 1983 is not whether the decision was "wise, fair or correct,' but whether [the defendants] honestly believed those reasons and acted in good faith upon those beliefs.'" *Kaster v. Safeco Ins. Co. Of Am.*, 212 F. Supp. 2d 1264, 1274 (D. Kan. 2002). The plaintiff has not produced evidence from which a reasonable jury could conclude that they did not.

The one fact that gives the Court pause is that the plaintiff has submitted evidence that the student petition, reflecting their belief that the plaintiff was not qualified, was pursued at the instigation of the faculty. The plaintiff has submitted the affidavits of two former students to this effect. (See Biggs Aff; Bolt Aff.)

As an initial matter, the defendants have moved to exclude this evidence from consideration, now and at trial, because the plaintiff neither disclosed the identity nor the testimony of these individuals in discovery, notwithstanding the requirements of Fed. R. Civ. P. 26(a)(1)(I) and subsequent interrogatories of the defendants which expressly requested such information. The Court would be inclined to recommend that this motion be granted and that the affidavits, therefore, should not inform the immediate inquiry as to pretext. The plaintiff's principal rejoinder is that she did not know whether the defendants' motion for summary judgment would implicate the issue of the student petition and, therefore, she had no reason to disclose the identity of the students or their testimony, when originally required or requested. This position is not in the spirit of the obligations imposed by either Rule 26 or 33 of the Federal Rules of Civil Procedure. This is the plaintiff's case to prosecute and it is precisely her job to anticipate the necessary elements of her claim and response to any defenses. Her obligations to produce it when compelled by Rule did not rise and fall on whether or not such anticipated discovery or evidence was actually used at the dispositive

14

motions stage or trial. Applying the factors[3] as outlined in *Southern States Rack and Fixture Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003), the Court is not strongly compelled by the plaintiff's explanation and the degree of surprise, when such affidavits are produced after the close of discovery and at summary judgment, seems substantial. To cure it would certainly cause actual delay and expense.

But, ultimately, the whole matter seems largely immaterial. Specifically, the Court does not believe the case turns on whether or not the allegations in the affidavit are true. The affidavits contend that two teachers, Ms. Holland and Ms. Van Behthusyn, "knew about the petition and w[ere] promoting it . . . ." (Bost Aff; see also Biggs Aff.) The affidavits, however, do not say that the petition was racially motivated or that the students who signed it were either coerced or otherwise did not agree with the contents of the petition, independent any participation of the teachers. So, taking the affidavits in a light most favorable to the plaintiff, they have no ability to raise any issues as to the credibility of the claim that the plaintiff submitted improper evaluations or that she was the instructor for a class that did not perform well on a certification exam or that the entire faculty gave her a vote of no confidence. While the affidavits, if believed, evidence a degree of disdain and intentionality in the efforts of certain faculty, it is not evidence of any pretext or falsity.

The Court does not dismiss evidence of personal conflict and the petition lightly. There is a sense of underhandedness about the whole matter. But, the plaintiff has offered the thinnest of *prima facie* cases, if she has one at all. Combined only with evidence that students and teachers acted in concert to criticize her, the plaintiff's case does not create sufficient implications associated with her *race* that a jury should be allowed to choose race as the cause of such actions over mean-spiritedness, dislike, or even a truthful view of

---

[3] The factors include: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

things – that the plaintiff was not rightly competent. It would be sheer conjecture on a jury's part and not the kind of reasoned analysis that circumstantial evidence and the inferences permitted by *McDonnell Douglas* would allow.

## II. The Whistleblower Act

Respectfully, it seems to the Court that the parties' treatment of the predicate basis for the plaintiff's Whistleblower Act[4] claim is scant. The only discernable description in the plaintiff's brief appears on page 6 of her factual recitation. There, the plaintiff states that she believed the Corrective Action Plan was instituted "in retaliation for her actions in resisting earlier complaints . . . ." (Pl. Resp. at 6.) By reference to the proceeding paragraph, it seems that the plaintiff means, by the phrase "her actions in resisting earlier complaints," to reference a grievance she attempted to file on November 28, 2007. (Pl. Ex. 15.) The Complaint would support this interpretation of the plaintiff's claim. (Compl. ¶¶ 24-28.)

Remarkably, however, the plaintiff, on the same page, conceded that the grievance "**was not received**," although "she thought she had filed it properly." (Pl. Brief at 6; see also Burdine Dep at 132.) Notwithstanding, the plaintiff has continued to argue delicately around this point. But, frankly, retaliation seems to be a factual impossibility. The act for which she believes she was retaliated against (her purported November grievance) did not actually occur or otherwise come to the attention of the defendants prior to the actions, which the plaintiff believes were retaliatory, namely the Corrective Action Plan, on December 17, 2007. Accordingly and by definition, the Plan and subsequent acts taken pursuant to it, could not have been retaliatory as against something that never occurred.

---

[4] The Whistleblower Act establishes a private cause of action for any "employee" of a "public body" who suffers retaliation because he or she makes a "report" of waste or "wrongdoing" by the public body or its employees to an "appropriate authority." S.C. Code § 8-27-20.

16

While the defendants argue numerous other bases, this seems the one most plainly fatal to any claim of retaliation under the Act.

The Court holds open the possibility that it has misperceive the nature of the plaintiff's alleged factual predicate or the chronology of events. The briefs and evidence as currently presented have not allowed for a different view, however.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that the defendants' motion for summary judgment [Doc. 31] be GRANTED as to all claims pending against it. The Court further recommends that the defendants' motion in limine be GRANTED.

IT IS SO RECOMMENDED.

s/Bruce H. Hendricks
United States Magistrate Judge

April 15, 2010
Greenville, South Carolina

17