**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION**

| | | |
|---|---|---|
| Orrie D. Burdine, | ) | |
| | ) | C.A. No. 6:08-cv-03764-JMC |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| Greenville Technical College, Lydia | ) | |
| Dunaway, Steve Valand, and Edward | ) | |
| Holman, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff brings this action pursuant to 42 U.S.C. §§ 1981 and 1983 and the South Carolina

Whistleblower's Act, S.C. Code Ann. § 8-27-10 (2009), alleging race discrimination and retaliation

in the workplace, respectively. This matter is before the court on the Magistrate Judge's Report and

Recommendation [Doc. # 50], filed on April 15, 2010, in which she recommends that Defendants'

Motion for Summary Judgment [Doc. # 31] and Defendants' Motion *in Limine* [Doc. # 39] be

granted.

Plaintiff was apprised of her right to file objections to the Report and Recommendation and

has done so in a memorandum filed on May 3, 2010. [Doc. # 51]. Plaintiff primarily argues that

despite the lack of direct evidence in this case, a reasonable jury could conclude that Defendants'

explanations are not credible and that racial discrimination at least partially motivated Defendants'

alleged adverse employment actions.

For the reasons stated herein, Defendants' Motion for Summary Judgment is granted, the Motion *in Limine* is granted, the Magistrate Judge's Report and Recommendation is adopted as stated herein, and this case is dismissed with prejudice.

## STANDARD OF REVIEW

The Magistrate Judge makes her Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02 for the District of South Carolina. A Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with this court. *See Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The court makes a *de novo* determination of those portions of the Report and Recommendation to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

## FACTUAL BACKGROUND[1]

Plaintiff began her employment with Defendant Greenville Technical College in March 1991. She was hired as a full-time instructor and her duties included lecturing, teaching and advising students. It appears that Plaintiff's work had been satisfactory, until the events that are the subject of this lawsuit began to unfold.

---

[1] Plaintiff objected to the Magistrate Judge's factual recitation on the ground that the Magistrate Judge failed to view various facts and factual inferences in the light most favorable to the non-moving party. Specifically, Plaintiff suggests that the Magistrate Judge either minimized or ignored the evidence demonstrating Defendants' scheme to oust Plaintiff as department head, ultimately leading to her resignation. As a result of Plaintiff's objections, the court makes its own recitation of the facts. Furthermore, the facts and evidence are considered and discussed in this Order in the light most favorable to Plaintiff, the party opposing summary judgment. *See Pittman v. Nelms*, 87 F.3d 116, 118 (4th Cir. 1996).

Between 2002 and 2003, Plaintiff became the department head of the Surgical Technology Program. Plaintiff was the only African-American department head in the Health Sciences and Nursing Division and the only African-American in the Surgical Technology Department. As department head, Plaintiff was responsible for Department operations, policy and procedure implementation, and student record maintenance. She was also responsible for curriculum development, syllabi, faculty supervision, teaching, advising, budget development, maintenance of accreditation records, working with affiliated agencies, and community coordinating. Generally, Defendant Greenville Technical College ("Greenville Tech") determines which faculty members will perform department head duties on an annual basis.

In 2006, Defendant Lydia Dunaway ("Dunaway") became Plaintiff's supervisor. Plaintiff had previously reported to Dean Gayle Heller and had worked under Heller without incident. It appears that the incidents relevant to Plaintiff's claims began on or about October 6 or October 9, 2006, when members of Plaintiff's Department began to have concerns about the falsification of student records.

During this time, Dunaway received three student behavior characteristic evaluations that Plaintiff completed. The evaluations contained handwritten observations relative to these students' performance in the Surgical Technology Program. The three particular students were not enrolled in the Program, however, because two of the students had never attended and one had dropped the class. Although Plaintiff admits that she completed the evaluations of students not enrolled in the Program, she maintains that the falsification was an accident and that she did not do so intentionally or with malice. Plaintiff describes the process of completing these forms as routine, except for those students with behavioral issues who required additional comments. In this particular batch of

3

evaluations, Plaintiff had only identified two students with behavioral issues and had separately completed those evaluations. Plaintiff filled out all of the other evaluations, including those for the students no longer enrolled, with identical ratings and comments. Plaintiff then exchanged her set of forms with Joyce Moyer ("Moyer") for Moyer's review.

Plaintiff and Moyer had worked together in the same Department for nine years, and Plaintiff contends that they had a good working relationship. According to Plaintiff, instead of calling the discrepancies to Plaintiff's attention, Moyer took the faulty evaluations directly to Dunaway, who presented them to then Human Resources Director Gregg Cann ("Cann"). Cann, Dunaway and Plaintiff met to discuss the alleged records falsification, and the incident was later dismissed. However, the incident was later included as part of Defendants' Corrective Action Plan.

Plaintiff asserts that Defendants ignored a similar infraction in which Moyer allegedly signed documents using the initials "CST"[2] after her name during periods when her certification had lapsed. Plaintiff contends that Defendants had knowledge of this lapse because Greenville Tech paid for Moyer's recertification each year. In response to the infraction, Defendants simply placed an objective in Moyer's annual performance appraisal in which Moyer was to achieve recertification that year. Plaintiff does not argue that greater or additional discipline was necessary; instead, she claims that Moyer's act was more egregious than Plaintiff's alleged falsification of the evaluations.

Plaintiff alleges that her oversight concerning the evaluations was followed with a series of other instances in which Moyer informed Dunaway about allegedly minor or trivial problems concerning Plaintiff without Plaintiff's knowledge. As a result of these acts, on October 25, 2006, Plaintiff wrote a letter to Dean Heller seeking his help in resolving the difficulties that she was

[2]"CST" stands for "Certified Surgical Technologist" and is a qualification required in various situations.

having with Moyer and Dunaway. Plaintiff alleges that Dunaway and Moyer's campaign against her continued until Plaintiff's meeting with Cann on May 17, 2007. In 2007, Plaintiff received excellent student appraisals, but Dunaway gave her a critical employee appraisal. Plaintiff responded by submitting a rebuttal in which she alleged that Dunaway's appraisal was made in retaliation against her for defending herself against Dunaway's earlier allegations. Plaintiff contends that Greenville Tech undertook no investigation at that point. Furthermore, Plaintiff alleges that Dunaway refused to approve a trip for Plaintiff to examine a program at another technical college. Despite Dunaway's refusal, Plaintiff went anyway on her day off and at her own expense. As a result, Dunaway criticized Plaintiff for not taking Moyer with her.

Plaintiff contends that a series of other minor events continued during the fall term of 2007. Also during that term, Moyer resigned and went to work as head of the Surgical Technology Department at Tri-County Technical College. Thereafter, in November 2007, a majority of students in the Program submitted a petition expressing serious concern regarding Plaintiff's leadership of the Department and concern over her competency as an instructor. Plaintiff believes that other faculty members solicited students to sign the petition against her. Plaintiff informed Curtis Harkness, Greenville Tech's Vice President for Administration and Diversity, of this belief. Additionally, on December 3, 2007, several of Plaintiff's students submitted a reply petition on Plaintiff's behalf, which Plaintiff contends was not included in any of the college's evaluations of her job performance. On November 28, 2007, Plaintiff attempted to file a grievance against Dunaway and Moyer because of their treatment of her, but by her own admission she failed to properly file the grievance.

In November 2007, the faculty members unanimously gave Plaintiff a vote of no confidence.

On November 30, 2007, Plaintiff met with Cann, Dean Heller, and Edward Holman ("Holman"), who was to replace Cann, to discuss Plaintiff's general accusations. Shortly after this meeting, Dean Heller retired, and Cann resigned. Around this same time, students enrolled in the Program were required to pass a certification examination. Plaintiff instructed these students, and apparently only a few of Plaintiff's students passed the examination.

It is undisputed that on December 13, 2007, Dunaway and Holman, the Interim Director of Human Resources, met with Plaintiff and presented a sixty (60) day Corrective Action Plan. The Corrective Action Plan included an instruction that Plaintiff review and update the Department's strategic plan, work on academic preparedness, and work on communication with Department faculty, staff, and students. Plaintiff submitted a rebuttal to the Corrective Action Plan on December 17, 2007, but Plaintiff avers that Defendants did not investigate the claims contained in her rebuttal. Nevertheless, at the end of that period, Defendants believed that Plaintiff had not shown improvement in the areas outlined.

On March 13, 2008, in response to Plaintiff's alleged failure to show improvement, Defendants issued Plaintiff a written Warning Notice of Substandard Performance. The warning required Plaintiff to improve in the following areas: (1) curriculum/course development; (2) teaching performance/instructor job duties; (3) supervision of faculty; (4) student advisement; and (5) professional development.

On April 11, 2008, Plaintiff filed a complaint of discrimination. The college reviewed Plaintiff's complaint and determined that because she had not alleged an adverse employment action, the complaint was not grievable in accordance with the college's grievance policy and procedure. Thereafter, on June 16, 2008, Plaintiff was notified that she had not met the objectives outlined in

the Corrective Action Plan or in the Warning Notice of Substandard Performance, and that as a result, she would be relieved of her department head duties.

On June 25, 2008, Plaintiff initiated a grievance that included the following complaints: (1) demotion from the department head position; (2) continuous harassment by Dunaway since November 28, 2007 when Plaintiff attempted to file a grievance against her, and (3) intentional infliction of emotional distress by Dunaway. In the interim, and prior to receiving a final decision concerning her grievance, Plaintiff submitted her resignation to Dunaway on July 30, 2008. Plaintiff's letter of resignation stated that she was resigning because of her demotion without cause and alleged that Dunaway appeared to be motivated by racial prejudice.

## DISCUSSION

### I. Summary Judgment Standard

The Magistrate Judge has outlined the appropriate legal standard in her Report and Recommendation.[3] Federal Rule of Civil Procedure 56(a) states:

> A party may move for summary judgment, identifying each claim or defense . . . on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law.

---

[3]On December 1, 2010, the revisions to Fed. R. Civ. P. 56 went into effect. The Magistrate Judge filed her Report and Recommendation on April 15, 2010, before the effective date of the revisions. Therefore, this court will cite to the corresponding sections of the revised rules. The legal effect of the revised rules does not change the outcome of this case.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Furthermore, Rule 56(e) provides in pertinent part:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>   (1)     give an opportunity to properly support or address the fact;
>   (2)     consider the fact undisputed for the purposes of the motion;
>   (3)     grant summary judgment if the motion and supporting materials - including the facts considered undisputed - show that the movant is entitled to it; or

(4)      issue any other appropriate order.

Fed. R. Civ. P. 56(e). Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must produce the existence of every element essential to his action that he bears the burden of adducing at a trial on the merits.

## II. Constructive Discharge

The Magistrate Judge did not consider Plaintiff's claim for constructive discharge or wrongful termination outside of Plaintiff's causes of action under 42 U.S.C. §§ 1981 and 1983 or under the South Carolina Whistleblower's Act, S.C. Code Ann. § 8-27-10 (2009). An employee is entitled to relief absent a formal discharge "if an employer deliberately makes the working conditions intolerable in an effort to induce the employee to quit." *Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 186 (4th Cir. 2004). To demonstrate constructive discharge, Plaintiff must prove two elements: (1) the deliberateness of Defendants' actions, motivated by racial bias, and (2) the objective intolerability of the working conditions. *See id.* at 187 (citing *Matvia v. Bald Head Island Mgmt., Inc.*, 259 F.3d 261, 273 (4th Cir. 2001)). Deliberateness requires that "a plaintiff . . . show that . . . her 'employer deliberately made an employee's working conditions intolerable and thereby forced [her] to quit [her] job.'" *Martin v. Cavalier Hotel Corp.,* 48 F.3d 1343, 1350 (4th Cir. 1995) (quoting *Bristow v. Daily Press, Inc.,* 770 F.2d 1251, 1255 (4th Cir. 1985)). "Intolerability . . . is assessed by the objective standard of whether a 'reasonable person' in the employee's position would have felt compelled to resign." *Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir. 1985). Plaintiff objects to the Magistrate Judge's decision not to make a separate recommendation on this claim. As an initial matter, Plaintiff has not pleaded a cause of action for constructive discharge. Moreover, the court agrees with the Magistrate Judge insofar as she recommends that the arguments

regarding constructive discharge be considered in the context of Plaintiff's other causes of action in the event that such arguments are relevant to any of Plaintiff's claims.

### III. Race Discrimination under 42 U.S.C. §§ 1981 and 1983

### A. Legal Standard

The Magistrate Judge has outlined the appropriate legal standard in her Report and Recommendation, and the court adopts that portion of the Magistrate Judge's Report and Recommendation as reproduced below.[4]

For purposes of considering allegations of discriminatory treatment or termination, a Section 1981 or 1983 claim is analyzed consistent with those principles which govern consideration of Title VII claims. *See Lightner v. City of Wilmington, N.C.*, 545 F.3d 260, 263 n.* (4th Cir. 2008); *Love-Lane v. Martin*, 355 F.3d 766, 786 (4th Cir. 2004). As the Fourth Circuit explained in the wake of *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003), a Title VII plaintiff may "avert summary judgment . . . through two avenues of proof." *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005) (quoting *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004)). A plaintiff can survive a motion for summary judgment by presenting direct or circumstantial evidence that raises a genuine issue of material fact as to whether an impermissible factor such as race motivated the employer's adverse employment decision. *Id.* at 318. Under the Civil Rights Act of 1991, the impermissible factor need not have been the sole factor. As long as it motivated the adverse action, the plaintiff can establish an unlawful employment practice. *See* 42 U.S.C. § 2000e-2(m); *King v. Hardesty*, 517 F.3d 1049, 1057 (8th Cir. 2008) (permitting use of the

---

[4] Plaintiff takes issue with the Magistrate Judge's application of the legal standard in this case. The court will address this issue below. *See infra* Part III.B.

10

*Price Waterhouse v. Hopkins*, 490 U.S. 228, 258 (1989), mixed-motive standard in a Section 1981, 1983 case). Alternatively, a plaintiff may "proceed under [the *McDonnell Douglas*] 'pretext' framework, under which the employee, after establishing a prima facie case of discrimination, demonstrates that the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination." *Hill*, 354 F.3d at 285. As stated, *McDonnell Douglas* is available to establish both Section 1981 and 1983 claims. *See Love-Lane*, 355 F.3d at 786.

*McDonnell Douglas* requires that an employee first prove a prima facie case of discrimination by a preponderance of the evidence. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973). If she succeeds, the employer has an opportunity to present a legitimate, nondiscriminatory reason for its employment action. *Id.* If the employer does so, the presumption of unlawful discrimination created by the *prima facie* case drops, and the burden shifts back to the employee to prove that the employer's nondiscriminatory justification was just a pretext for discrimination. *Id.*

In *Reeves v. Sanderson Plumbing Prods., Inc.*, the Supreme Court reiterated that evidence of pretext, combined with a plaintiff's prima facie case, does not compel judgment for the plaintiff. Such evidence "is not enough . . . to disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination." 530 U.S. 133, 147 (2000) (citation omitted). However, the court also stated that, under the appropriate circumstances, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Id.* It is the plaintiff's burden to create an inference that the defendant's proffered reason is a pretext for intentional discrimination. *See id.* at 147-48. Pretext analysis does not convert Title VII into a

vehicle for challenging unfair employment decisions which are not based on discrimination. *Holder v. City of Raleigh*, 867 F.2d 823, 828 (4th Cir. 1989). Conclusory allegations, without more, are insufficient to preclude the granting of the defendant's summary judgment motion. *See Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *abrogated on other grounds by Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989).

## B. Plaintiff's Objection to the Legal Standard

Plaintiff argues that a recent Fourth Circuit opinion, *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289 (2010), has further refined the manner in which the lower courts should evaluate employment discrimination claims and rejects outright the approach taken by the Magistrate Judge in analyzing Plaintiff's claim here. Specifically, Plaintiff points to the following passage from that opinion as support for her claim:

> Notwithstanding the intricacies of proof schemes, the core of every Title VII case remains the same, necessitating resolution of "the ultimate question of discrimination *vel non.*" As the Supreme Court has explained, and "[t]he ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." Thus, "[c]ourts must . . . resist the temptation to become so entwined in the intricacies of the [*McDonnell Douglas*] proof scheme that they forget that the scheme exists solely to facilitate determination of 'the ultimate question of discrimination *vel non.*'"

> By the time of appeal especially, the issue boils down to whether the plaintiff has presented a triable question of intentional discrimination, and "the *McDonnell Douglas* framework-with its presumptions and burdens-is no longer relevant." As the Supreme Court has made clear, "courts should [not] treat discrimination differently from other ultimate questions of fact." Under this rubric, summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law."

*Id.* at 294-95 (omissions in original) (citations omitted). Moreover, Plaintiff relies on the following language in the concurring opinion:

[I]n intentional discrimination cases, we should not examine the trees so minutely that we lose sight of the forest. The ultimate question in this case, as in all intentional discrimination cases, is *not* whether the *McDonnell Douglas* test is satisfied. It is instead, as the majority opinion teaches, whether the plaintiff has generated a genuine dispute of material fact that she is the victim of intentional discrimination, notwithstanding facially plausible reasons offered by the employer for its adverse employment action. The proof scheme is but a useful tool to help identify and resolve that real issue.

*Id.* at 302 (Davis, J., concurring).

The court does not read *Merritt* to dispose of Plaintiff's threshold burden of proof under *McDonnell Douglas*, a burden which Plaintiff cannot satisfy. Moreover, the facts in *Merritt* are distinguishable. In *Merritt*, the female plaintiff alleged sex discrimination against her employers. *Merritt*, 601 F.3d at 291. The plaintiff produced evidence to raise a genuine issue of material fact concerning her allegation that the performance test to which she was subjected was inconsistently applied to men. *Id.* at 298-99. In addition, the plaintiff introduced evidence that "a pervasive aversion to the idea of female Pickup and Delivery drivers" existed at Old Dominion and that "employees of all ranks, seemed to share a view that women were unfit [for the Pickup and Delivery] position." *Id.* at 300-01. The court found that the person who fired the plaintiff "harbored discriminatory animus toward women insofar as he was responsible for selectively employing the [performance test] and was part and parcel of Old Dominion's widespread resistance to hiring women as Pickup and Delivery drivers." *Id.* at 296-97.

*Merritt* stands for the proposition that after a plaintiff has established her *prima facie* case, and the employer has offered legitimate, nondiscriminatory reasons for the alleged discrimination, the final pretext inquiry merges with the ultimate burden of persuading the court that the plaintiff has been the victim of discrimination. Aside from the fact that Plaintiff seems to request that the court ignore the significant evidentiary shortcomings in her case as compared to the evidence of

13

sexually discriminatory attitudes that the *Merritt* plaintiff presented, Plaintiff's analysis of her claim is misguided. The plaintiff in *Merritt* provided substantial circumstantial evidence sufficient to withstand summary judgment that she was fired on the basis of her sex. *Merritt*, 601 F.3d at 303. Yet in this case, despite Plaintiff's repeated assertions that her evidence is largely circumstantial, she has not submitted "substantial direct and circumstantial evidence" sufficient to survive a motion for summary judgment that Defendants' treatment of her was a pretext for discriminatory animus. Instead, it appears that Defendants' motivation for their treatment of Plaintiff was due to her poor job performance. Moreover, Defendants have produced racially neutral reasons for the actions taken against Plaintiff including the Corrective Action Plan, the written Warning Notice, and the reassignment; Plaintiff can only suggest, without providing substantial circumstantial evidence, that racial animus motivated Defendants. Plaintiff has not produced the kind of "evidence that clearly indicates a discriminatory attitude at the workplace and . . . illustrate[s] a nexus between that negative attitude and the employment action." *See Lettieri v. Equant, Inc.*, 478 F.3d 640, 649 (4th Cir. 2007) (quoting *Brinkley v. Harbour Recreation Club,* 180 F.3d 598, 608 (4th Cir. 1999)); *Merritt*, 601 F.3d at 300 ("It is the decision maker's intent that remains crucial, and in the absence of a clear nexus with the employment decision in question, the materiality of stray or isolated remarks [relating to sex] is substantially reduced.").

## C. Prima Facie Case

Using the standard established in *McDonnell Douglas* and argued by the parties, the Magistrate Judge determined that Plaintiff could not survive summary judgment under the burden shifting scheme. To establish a prima facie case under the *McDonnell Douglas* standard, 1) a plaintiff must demonstrate that she was a member of a protected class; 2) that she suffered from an

adverse employment action; 3) that at the time the employer took the adverse employment action, she was performing at a level that met her employer's legitimate expectations; and 4) that other employees, not members of the protected class, were retained under apparently similar circumstances or were otherwise treated favorably. *McDonnell Douglas* Corp., 411 U.S. at 802; *Bryant v. Bell Atl. Maryland, Inc.*, 288 F.3d 124, 133 (4th Cir. 2002). The primary focus of the parties' arguments is whether Plaintiff suffered a constructive discharge. However, the Magistrate Judge did not reach the issue of constructive discharge because she found that Plaintiff failed to establish the fourth element of her prima facie case. Plaintiff objects to the Magistrate's Judge's finding on the fourth element and her failure to address the constructive discharge argument.

As for Plaintiff's objection regarding constructive discharge, the court reiterates the Magistrate Judge's observation that Plaintiff did not plead a constructive discharge cause of action in her complaint. [Doc. # 50, at 5]. At best she mentions constructive discharge within the context of her Whistleblower Act claim. [Doc. # 1-1, at 15]. In her discussion, the Magistrate Judge opined that "constructive discharge . . . is a legal fiction by which wrongful termination claims are salvaged where no actual or other adverse employment action has, in fact, occurred." [Doc. # 50, at 5]. For this reason, and to the extent the Magistrate Judge decided to address the constructive discharge issue, she decided to do so only within the context of Plaintiff's Title VII claim. In this context, the issue is whether Plaintiff presents evidence sufficient to raise a genuine issue of material fact concerning the second element of the *McDonnell Douglas* test. To establish this element, Plaintiff must also show that she suffered an adverse employment action.

"An adverse employment action is a discriminatory act which adversely affects the terms, conditions, or benefits of the plaintiff's employment." *James v. Booz-Allen & Hamilton, Inc.*, 368

F.3d 371, 375-76 (4th Cir. 2004). The question to be asked in deciding whether there has been an adverse employment action is "whether there has been discrimination in what could be characterized as ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating." *Page v. Bolger*, 645 F.2d 337, 233 (4th Cir. 1981). Furthermore, an adverse employment action requires "some significant detrimental effect and 'absent any decrease in compensation, job title, level of responsibility, or opportunity for promotion, reassignment to a new position commensurate with one's salary does not constitute an adverse employment action even if the new job does cause some modest stress not present in the old position.'" *Holland v. Wash. Homes, Inc.,* 487 F.3d 208, 219 (4th Cir. 2007) (citing *Boone v. Goldin,* 178 F.3d 208, 219 (4th Cir. 2007)).

In this case, Plaintiff did not suffer an adverse employment action because Dunaway did not demote her; instead, Plaintiff was simply relieved of her duties as department head. A demotion is defined under the State Employee Grievance Procedure Act as "the assignment of an employee by the appointing authority from one established position to a different established position having a lower State salary range." S.C. Code Ann. § 8-17-320(8). As Plaintiff's established position and base compensation remained the same, under State law, Defendant's decision to reassign Plaintiff from her role as department head cannot be considered a demotion.

The policies and procedures adopted by the State Board for Technical and Comprehensive Education also support this conclusion. First, department head duties are discretionary functions and are not separate employment positions. As such, department head duties are within the sole discretion of the college. Furthermore, a department head may be relieved of her duties at any time with thirty (30) days' notice or immediately in situations where the faculty member fails to meet the established

standards. [Doc. # 31-2, at 3-12]. Because of Plaintiff's documented failure to meet established standards, Defendant had the option of relieving Plaintiff from her duties as a department head. However, Defendant provided her with two written notices of its concerns regarding her performance and afforded her six months to improve her performance. Second, Plaintiff's reassignment from department head was not a demotion because she suffered no decrease in base compensation. Although Plaintiff was no longer eligible to receive a $200 supplement for duties rendered to Defendant as a department head, Plaintiff still enjoyed full salary and benefits within her salary range. Accordingly, Plaintiff suffered no adverse employment action sufficient to establish a prima facie case of discrimination.

### 1. Similarly Situated Co-Employees

Plaintiff's primary objection on this point is that the Magistrate Judge failed to place Dunaway's actions in the context of her overall scheme to force Plaintiff out of the Department. Specifically, Plaintiff contends that Dunaway treated her differently from the other employees who reported to Dunaway and that all other employees reporting to her were white, including Moyer. Plaintiff contends that Dunaway replaced Plaintiff with Moyer and that summary judgment is inappropriate because Dunaway made and pursued allegations of misconduct against her that a reasonable person would regard as frivolous.

Nevertheless, the court agrees with the Magistrate Judge that Plaintiff has not established the fourth element of her prima facie case. To establish this element, the employees must be similarly situated "in all relevant respects; that they 'dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Ward v. City of N. Myrtle*

*Beach*, 457 F. Supp. 2d 625, 643 (D.S.C. 2006) (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)). By definition, Plaintiff, as Moyer's supervisor, cannot be similarly situated to Moyer because Plaintiff was Moyer's supervisor. *See Vasquez v. County of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003) ("[I]ndividuals are similarly situated when they have similar jobs and display similar conduct."); *Hollins v. Atlantic Co., Inc.*, 188 F.3d 652, 659 (6th Cir.1999) (holding that, to be similarly situated, an employee must have the same supervisor, be subject to the same standards, and have engaged in the same conduct).

The court further agrees with the Magistrate Judge's distinguishment of Plaintiff's conduct from Moyer's isolated use of the CST designation. In other words, Plaintiff did not produce evidence that her conduct and Moyer's conduct were comparable. Defendants' actions towards Plaintiff, including the Corrective Action Plan, written Warning, and the removal of her department head responsibilities were based in part on her faulty student evaluations. Defendants also cited other reasons for their actions towards Plaintiff, including her students' poor performance on a certification exam and the faculty's vote of no confidence in Plaintiff as department head. In comparing Plaintiff's conduct to Moyer's conduct, the court reaches the same conclusion as the Magistrate Judge. Plaintiff's degree of negligence or malfeasance, as characterized by the Magistrate Judge, was greater than Moyer's, irrespective of any intent or malice on Plaintiff's part. Therefore, the Magistrate Judge's recommendation as to the fourth element of Plaintiff's case is adopted, and Defendants are entitled to summary judgment on this basis.

### 2. Legitimate, Non-Discriminatory Reason

Defendants have provided the following non-discriminatory reasons for demoting Plaintiff: (1) in October 2007, Plaintiff submitted student evaluations for individuals who had not actually completed her class; (2) students submitted a petition indicating their concern over Plaintiff's competency as an instructor; (3) the faculty members gave Plaintiff a vote of no confidence in her performance as department head; and (4) students under Plaintiff's instruction failed to perform satisfactorily on a certification exam.

As a result of these incidents, in December 2007, Plaintiff was placed on a sixty (60) day Corrective Action Plan, and at the end of that period, Plaintiff had not shown satisfactory improvement. Thereafter, Plaintiff was given a written Warning Notice of Substandard Performance in March 2008. Finally, in June 2008, she was removed as department head for her failure to meet the objectives of the Corrective Action Plan. As noted by the Magistrate Judge, unsatisfactory job performance constitutes a legitimate, non-discriminatory reason for employee discipline. *Karpel v. Inova Health System Services*, 134 F.3d 1222, 1229 (4th Cir. 1998) ("Inova's termination of Karpel was based on her unsatisfactory job performance, including, her tardiness and failure to complete her monthly summaries.").

### 3. Pretext

Despite the Magistrate Judge's conclusion with respect to Plaintiff's prima facie case, the Magistrate Judge further addressed Plaintiff's pretext argument and recommended that this court grant Defendant's motion for summary judgment because Plaintiff did not provide proof sufficient to overcome her evidentiary burden under the *McDonnell Douglas* standard.

Because Defendants have proffered legitimate, non-discriminatory reasons for their actions, Plaintiff bears the burden of demonstrating that the real reason for the termination was, in fact, an unlawful one. *See Reeves*, 530 U.S. at 142-43. Generally, a plaintiff may satisfy this burden by providing proof that a defendant's proffered reasons are pretextual or false. *See id.* at 144. The court agrees with the Magistrate Judge that Plaintiff has neither recognized her burden nor made any attempt to satisfy it, and Plaintiff's analysis terminates after a discussion of the prima facie case.

In her objections to the Report and Recommendation, Plaintiff's argument focuses on an alleged scheme undertaken by Defendants to remove her as department head. In support of her contention that this scheme was racially motivated, she merely states that she was the only African-American employee in her Department and was replaced by a white employee. Again, Plaintiff has not provided evidence of a nexus between Defendants' treatment of her and a racial motivation underlying that treatment. Plaintiff merely claims that her case is largely circumstantial. However, "[t]o show pretext using circumstantial evidence, a plaintiff must put forward specific and substantial evidence challenging the credibility of the employer's motives." *Vasquez*, 349 F.3d at 642 (citing *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1222 (9th Cir. 1998)); *Cordova v. State Farm Ins. Cos.*, 124 F.3d 1145, 1149-50 (9th Cir. 1997); *Lindahl v. Air France*, 930 F.2d 1434, 1438-39 (9th Cir. 1991)). Of course, Plaintiff disagrees with the reasons given for relieving her of her department head duties. However, it does not appear to the court that such disagreement proves falsity or pretext for racial discrimination. Therefore, assuming that Dunaway and Moyer *did* undertake to remove Plaintiff as department head, the mere fact that she happens to be African-American does not amount to the type of circumstantial evidence described in *Merritt*, in which the plaintiff could point to comments related to sex made by her co-workers and superiors regarding her ability to perform her

job. Furthermore, Plaintiff cannot rest upon generalized assertions concerning atmospheric conditions to establish discrimination. *See Richmond v. J.A. Croson Co.*, 488 U.S. 469 (1989). To be actionable, the law requires more than a mere declaration that race was a legitimate factor for a particular condition. *Id.*

As "evidence," Plaintiff points to several occurrences involving Dunaway, none of which establish a racially discriminatory motive. Plaintiff points to the fact that Dunaway would not allow her to properly manage Moyer; that Dunaway would not approve a trip proposed by Plaintiff to observe a new program but then reprimanded her for not taking Moyer when Plaintiff used her vacation time to visit the program; and that after Moyer had left Greenville Tech for another job, she indicated that she would not return until Plaintiff was gone. As further evidence of the alleged racial discrimination, Plaintiff points to the fact that many of her rebuttals, including her objections to performance evaluations and the Corrective Action Plan, went unanswered. However, as the Magistrate Judge stated in her Report and Recommendation,

> Even if the Court conceded all of it, the evidence does not refute the truthfulness of the alleged facts: that the plaintiff submitted evaluations for students not in her class or that students in her class failed to perform well on an important certification exam. As to the latter, the plaintiff has made no rejoinder. As to the former, the plaintiff of course contends that it was inadvertent. The defendants, however, have never stridently argued that the evaluations were intentionally falsified. That seems besides the point. The concern, of course, would be that the evaluator, whether incidentally or not, would have not realized the mistake. The oversight, in other words, need not have been malicious to say something about competency and be, therefore, a basis for corrective action. Regardless, the plaintiff has not produced evidence that any of the events were incredible. She has not denied that the faculty gave her a vote of no confidence nor has she attempted to explain how she met the objectives of the Corrective Action Plan, when the defendants said she did not.

[Doc. # 50, at 13].

In other words, Plaintiff has provided insufficient proof to carry her burden of demonstrating that Defendants' asserted reasons for her demotion were pretextual or false. There was no doubt substantial tension among Plaintiff, the faculty and the students concerning Plaintiff's ability to perform her job. However, the pretext analysis does not convert Title VII or §§ 1981 and 1983 into vehicles for challenging unfair employment decisions that are not based on discrimination. *See Holder v. City of Raleigh*, 867 F.2d 823, 828 (4th Cir.1989). The inquiry under Title VII and §§ 1981 and 1983 is not whether the decision was "'wise, fair or correct,' but whether [the defendants] honestly believed those reasons and acted in good faith upon those beliefs." *Kaster v. Safeco Ins. Co. of Am.*, 212 F. Supp. 2d 1264, 1274 (D. Kan. 2002). The court agrees with the Magistrate Judge that Plaintiff has not produced evidence from which a reasonable jury could conclude that Defendants neither honestly believed their justifications nor acted in good faith on them.

**IV. Motion in Limine**

Plaintiff has submitted evidence that the student petition, reflecting the students' belief that Plaintiff was not qualified, was pursued at the instigation of the faculty. In support of this contention, Plaintiff has submitted affidavits of two former students to this effect. Defendants moved to exclude this evidence from consideration, now and at trial, because Plaintiff neither disclosed the identity nor the testimony of these individuals in discovery, despite the requirements of Fed. R. Civ. P. 26(a)(1)(A)(I) and subsequent interrogatories in which Defendants expressly requested such information.

The court agrees with the Magistrate Judge's recommendation that this motion be granted and that the affidavits should not be used to support Plaintiff's pretext argument. Plaintiff argues that she did not know whether Defendants' motion for summary judgment would concern the student

petition and, consequently, she did not believe that disclosure of the identity of the students or their testimony, when originally required or requested, was necessary. The court agrees with the Magistrate Judge that this position is not in the spirit of the obligations imposed by either Rule 26 or 33 of the Federal Rules of Civil Procedure. Her obligation to produce such discovery when compelled by the Rule is not based on whether it was actually used during a dispositive motion or at trial. Furthermore, applying the factors as outlined in *Southern States Rack and Fixture Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003), the court does not find Plaintiff's explanation compelling.[5]

More significantly, the court agrees that this case does not turn on whether or not the allegations in the affidavit are true. The affidavits contend that two teachers, Ms. Holland and Ms. Van Behthusyn, "knew about the petition and w[ere] promoting it . . . ." (Docs. # 36-12, 36-13). There is no indication from the affidavits or otherwise that the student petition was racially motivated. The affidavits demonstrate some sort of motivating force behind the student petitions, but they do not evidence that the motivation was based on race.

### V. Whistleblower Act

S.C. Code Ann. § 8-27-20 (2009) (the "Whistleblower Act" or the "Act") establishes a private cause of action for any "employee of a public body" who suffers retaliation because he or she makes a "report" of waste or "wrongdoing" by the public body or its employees to an "appropriate authority." S.C. Code Ann. § 8-27-20 (2009). The Magistrate Judge determined that Plaintiff's claim based on the November 28, 2007 grievance that she failed to file appropriately could not be

---

[5]The factors include: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence."

the basis of her claim under the Act because she admitted that it was not properly filed; therefore, retaliation based on that complaint is a factual impossibility.

Plaintiff objects to the Magistrate Judge's Report and Recommendation, by arguing that the statute is broad enough to protect her from retaliation for filing any of her written complaints, whether submitted by email, in the form of a grievance, or as a rebuttal to any of the disciplinary actions against her. Plaintiff claims that she submitted written complaints of wrongdoing several times during the events leading up to her ultimate resignation, including: (1) a written letter to Dean Heller on October 25, 2006 concerning what she perceived as attacks on her after the falsification of records incident earlier that month; (2) written complaints submitted in 2007, including a complaint to Gregg Cann concerning over a dozen incidents between January and May 2007; (3) e-mails to Curtis Hartness reporting that students had told her the faculty had initiated the November 2007 petition against her; (4) her December 14, 2007 rebuttal to the Corrective Action Notice; (5) her April 4, 2008 complaint to Holman; and (6) her April 11, 2008 complaint of discrimination. Plaintiff contends that each of these documents constitute reports of wrongdoing as protected under the Act and they support a complaint based on adverse employment actions taken against her.

However, Plaintiff ignores the following statutory requirement: "No action may be brought under this chapter unless (1) the employee has exhausted all available grievance or other administrative remedies; and (2) any previous proceedings have resulted in a finding that the employee would not have been disciplined but for the reporting of alleged wrongdoing." S.C. Code Ann. § 8-27-30(A)(2009). Plaintiff's reliance upon various correspondences as a factual foundation under the Act is misplaced because she has not satisfied the fundamental requirements necessary to bring a claim. Plaintiff has failed to produce evidence establishing exhaustion of all available

remedies. She has also failed to present evidence that any previous proceedings resulted in a finding that she would not have been disciplined but for the reporting of alleged wrongdoing as required by the Whistleblower Act. As such, Plaintiff failed to plead or produce any evidence of actionable retaliation in accordance with the Whistleblower Act.

Therefore, the court adopts the Magistrate Judge's determination that actionable retaliation based on the formal grievance that she admittedly did not properly file cannot be established because it is a factual impossibility. Accordingly, no genuine issue of material fact sufficient to present to a jury exists, and summary judgment is appropriate. Therefore, Defendants' summary judgment motion with respect to this cause of action is granted.

## CONCLUSION

Based on the foregoing, it is **ORDERED** that Defendants' Motion for Summary Judgment [Doc. # 31] and Defendants' Motion *in Limine* [Doc. # 39] are granted.

**IT IS SO ORDERED**.

s/ J. Michelle Childs
United States District Judge

December 16, 2010
Greenville, South Carolina